UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | |
|---|---|
| ORANGE COAST TITLE COMPANY OF NORTHERN CALIFORNIA, § § § Plaintiff, § § v. § § GREATER COMMUNITY § MISSIONARY BAPTIST CHURCH, et § al., § § Defendants. § | CIVIL ACTION NO. 3:24-CV-2136-B |

## MEMORANDUM OPINION AND ORDER

Before the Court is Plaintiff Orange Coast Title Company of Northern California ("OCT")'s Motion for Summary Judgment (Doc. 24). For the following reasons, the Court **GRANTS IN PART** and **DENIES IN PART** OCT's Motion.

### I.

### BACKGROUND

This is a dispute over $230,072.82 in cash that was mistakenly wired by OCT to a savings account held by Defendant Greater Community Missionary Baptist Church (the "Church"). OCT, a title company, handles escrow arrangements related to the purchase and sale of real property. *See* Doc. 24-2, Mot. Summ. J. App., 2. While handling one such real estate transaction, OCT accidentally wired $913,216.57 in escrow sale proceeds (the "Proceeds") to the wrong bank account due to wiring instructions with the wrong account number. *Id.* at 2-3. Instead of going as intended to a trust which sold certain real property in California (the "Trust"), the Proceeds were sent to a completely unrelated savings account held by the Church. *Id.*

Prior to receiving the Proceeds, the Church's savings account reflected an account balance of $0.55. *Id.* at 7. At the time the payment was received, the Church was not expecting any payments from any title company and had never heard of OCT. *Id.* at 129-31. Nor had the Church provided its savings account number to any would-be donor or third party. *Id.* at 121-22, 130. In fact, in over three decades, the Church's pastor, Kennedy Jones, could not recall a donation larger than $40,000. *Id.* at 129. The Church normally received donations in the form of cash or paper checks, or via direct digital transaction platforms such as Zelle, Cash App, or PayPal. *Id.* at 124. When donations were given via wire, the Church needed to first provide the donor the Church's account information. *Id.*

Despite the unexpected appearance of the Proceeds, the Church did not contact their bank, nor did they contact OCT itself, to inquire about the purpose or origin of the transfer. *Id.* at 134, 136-37. Instead, the very next day, the Church transferred $2,000 to a checking account held by Zenith Charity, LLC ("Zenith"). *Id.* at 9; Doc. 24-1, Br. Mot. Summ. J., 6. Then, the following day, the Church transferred an additional $15,000 out of the savings account—this time to its own checking account. Doc. 24-2, Mot. Summ. J. App., 9; Doc. 24-1, Br. Mot. Summ. J., 6. The Church then increased its withdrawals, transferring more than $800,000 out of the savings account over the next few weeks. *See* Doc. 24-2, Mot. Summ. J. App., 9, 11. After all the transfers, the Church had $50,209.03 left in the savings account. *Id.* at 11. In total, Zenith received $748,000 out of the Church's savings account in the relevant period, *see id.* at 99, 101—$50,000 of which was then transferred to the Church's checking account, *id.* at 102, and $77,000 of which was transferred to a checking account held by KJEJ Enterprises, LLC ("KJEJ"), *id.* at 102, 106. Along with the money transferred from Zenith, KJEJ received $28,000 from the Church's checking account in May 2023, and an additional $14,000 from the Church's checking account in June 2023. *Id.* at 28, 51-52.

The Church's bank—J.P. Morgan Chase Bank ("Chase Bank")—froze the remaining savings account balance on July 14, 2023. *Id.* at 13. Chase Bank made additional efforts to freeze funds in the Church's various affiliated accounts, freezing a total of $748,653.00 between July 6, 2023, and July 14, 2023. *Id.* at 13, 32, 94, 109. This included $619,944.95 of the Proceeds that remained in Zenith's account, *id.* at 109, and $57,928.27 in KJEJ's account, *id.* at 94. On April 30, 2025, Chase Bank released $683,143.75 of those frozen funds back to OCT. *Id.* at 3. For reasons unknown to the Court, Chase Bank did not return an additional $65,509.25 in frozen funds (which remain in possession of the Church, Zenith, and KJEJ), nor did the Church return the remaining $164,563.57 from the original erroneous wire amount, which it claims to have spent. *Id.* at 3, 141. Thus, $230,072.82 of the original Proceeds remain unreturned and outstanding.

OCT brought the present action in August 2024. *See generally* Doc. 1, Compl. OCT names as defendants the Church, Kennedy Jones, Elaine Jones, Kenda Alane Jones, Michael Robinson, KJEJ, and Zenith. *Id.* ¶¶ 2-8. OCT asserts causes of action for unjust enrichment, conversion, theft under the Texas Theft Liability Act ("TTLA"), money had and received, and fraudulent transfer under the Texas Uniform Fraudulent Transfer Act ("TUFTA"). *Id.* ¶¶ 29-55, 60-63. OCT also requests indemnification or contribution for a separate lawsuit between OCT and the Trust and declaratory relief that OCT is entitled to the Proceeds. *Id.* at ¶¶ 56-59, 64-67. OCT now moves for partial summary judgment against only the Church, KJEJ, and Zenith (referred to collectively as "Defendants") on its money had and received, unjust enrichment, theft, fraudulent transfer, and conversion claims. Doc. 24-1, Br. Mot. Summ. J., 1. The Court considers that Motion below.

## II.

## LEGAL STANDARD

Under Rule 56(a) of the Federal Rules of Civil Procedure, summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986) (internal quotations omitted). On a motion for summary judgment, the burden is on the movant to prove that no genuine issue of material fact exists. *Provident Life & Accident Ins. Co. v. Goel*, 274 F.3d 984, 991 (5th Cir. 2001). To determine whether a genuine issue exists for trial, the court must view all of the evidence in the light most favorable to the non-movant. *See Chaplin v. NationsCredit Corp.*, 307 F.3d 368, 371-72 (5th Cir. 2002).

Once the movant has met its burden, the burden shifts to the non-movant, who must show that summary judgment is not appropriate. *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (citing *Celotex*, 477 U.S. at 325). "This burden is not satisfied with 'some metaphysical doubt as to material facts,' . . . by 'conclusory allegations,' . . . by 'unsubstantiated assertions,' . . . or by only a 'scintilla' of evidence." *Id.* (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986)) (other citations omitted). A non-moving party with the burden of proof must "identify specific evidence in the record and articulate the manner in which that evidence supports that party's claim," *Johnson v. Deep E. Tex. Reg'l Narcotics Trafficking Task Force*, 379 F.3d 293, 301 (5th Cir. 2004) (citation omitted), and "come forward with 'specific facts showing that there is a *genuine issue for trial*.'" *Matsushita*, 475 U.S. at 587 (emphasis in original) (citation omitted). Finally, the evidence

that any party proffers "must be competent and admissible at trial." *Bellard v. Gautreaux*, 675 F.3d 454, 460 (5th Cir. 2012) (citation omitted).

## III.

## ANALYSIS

The Court **GRANTS** summary judgment to OCT on its money had and received claim. The Court does not resolve OCT's unjust enrichment claim because money had and received and unjust enrichment, properly characterized, are alternative theories for a single restitution claim. The Court **DENIES** summary judgment on OCT's theft, fraudulent transfer, and conversion claims because material facts remain in dispute that preclude summary judgment.

A.   *Money Had and Received*

"Money had and received is an equitable action that may be maintained to prevent unjust enrichment when one person obtains money which in equity and good conscience belongs to another." *H.E.B., LLC v. Ardinger*, 369 S.W.3d 496, 507 (Tex. App.—Fort Worth 2012, no pet.) (citing *Staats v. Miller*, 243 S.W.2d 686, 687 (Tex. 1951)) (other citations omitted). "The action is not based on wrongdoing; rather, it looks only to the justice of the case and inquires whether the defendant has received money that rightfully belongs to another." *Id.* (citation omitted); *Geiken v. Worku*, No. 3:15-CV-2442-B, 2017 WL 1709692, at *7 (N.D. Tex. May 2, 2017) (Boyle, J.) (citation omitted). Unlike other causes of action, a money had and received claim lacks "technical rules and formalities" and considers solely "whether the defendant holds money, which . . . belongs to the plaintiff." *H.E.B.*, 369 S.W.3d at 507 (quoting *Staats*, 243 S.W.2d at 687). Even where the plaintiff was negligent in erroneously paying funds to the defendant, this "does not give the payee the right to retain what was not his due." *Lyman D. Robinson Fam. Ltd. P'ship v. McWilliams & Thompson, PLLC*,

143 S.W.3d 518, 520 (Tex. App.—Dallas 2004, pet. denied). Nor does "inexcusable delay" in requesting return of the funds operate as an independent defense. *Id.* (citations omitted).

A plaintiff cannot recover under a money had and received claim where "the recipient of the funds has materially changed his position in reliance on the payment." *Greer v. White Oak State Bank*, 673 S.W.2d 326, 329 (Tex. App.—Texarkana 1984, no writ) (citation omitted); *see Lincoln Nat'l Life Ins. Co. v. Brown Schs., Inc.*, 757 S.W.2d 411, 413 (Tex. App.—Houston [14th Dist.] 1988, no writ) ("If there is some other reason which makes it unequitable or inexpedient, restitution will be denied the paying party." (citation omitted)). However, a material change in position and reliance are not present when the defendant merely "no longer has the specific funds." *Greer*, 673 S.W.2d at 329 (citing *Pickett v. Republic Nat'l Bank*, 619 S.W.2d 399, 400 (Tex. 1981) (finding that an estate, which mistakenly received certain funds from a bank and paid out those funds to its beneficiaries, could not show that it had changed its position merely because it no longer had those funds)); *see Ashmore v. JMS Constr., Inc.*, No. 05-15-00537-CV, 2016 WL 7217256, at *11 (Tex. App.—Dallas Dec. 13, 2016, no pet.) (collecting cases).

The Church acknowledges that the wire of the Proceeds was not a donation and was sent to the Church in error. Doc. 24-2, Mot. Summ. J. App., 131. But Defendants nevertheless argue that OCT's money had and received claim is deficient because they "materially changed position after receiving the wire transfer." Doc. 28-1, Defs.' Resp. Summ. J., 5. Specifically, Defendants argue that when the Proceeds were first received, they believed it to be a donation and used the funds to "maintain[] operations, install[] a sprinkler system, and . . . improv[e] online engagement." *Id.* at 6. However, Defendants cannot demonstrate a material change in position merely by arguing that they have already spent those funds. *See Pickett*, 619 S.W.2d at 399. Nor does the manner in which

Defendants spent the funds demonstrate that they acted differently than they would have otherwise. In fact, Defendants argue that receiving donations was a "common occurrence" and that the Proceeds were used to "*further* the purpose of the church." Doc. 28-1, Defs.' Resp. Summ. J., 6 (emphasis added). In his deposition, the Church's Pastor acknowledged that the Proceeds were used "for just operations and keeping us moving," and for paying off "past debts" including preexisting debts related to the sprinkler system. Doc. 24-2, Mot. Summ. J. App., 142. Thus, the Church applied the Proceeds to regular operations and debt obligations that preexisted the erroneous wire transfer. This does not represent a change in position, and there is no basis to assume that requiring return of the funds would be "unequitable or inexpedient." *See Lincoln Nat'l*, 757 S.W.2d at 413.

Moreover, Defendants' purported reliance on receipt of the Proceeds was not reasonable. The Church had never received any donation remotely approximating that size before, the Proceeds inexplicably appeared in an account that was not used for receiving donations, and Defendants never contacted either OCT or Chase Bank regarding those Proceeds. *See* Doc. 24-2, Mot. Summ. J. App., 124, 129, 134, 136-37.

Based on the undisputed material facts presented, OCT is entitled to summary judgment on its money had and received claim as a matter of law.

B.   *Unjust Enrichment*

Unjust enrichment is a theory of restitution and not an independent cause of action itself. *Argyle Indep. Sch. Dist. ex rel. Bd. of Trs. v. Wolf*, 234 S.W.3d 229, 246 (Tex. App.—Fort Worth 2007, no pet.) (citations omitted); *Best Buy Co. v. Barrera*, 214 S.W.3d 66, 73 (Tex. App.—Corpus Christi–Edinburg 2006) (citations omitted), *review granted, judgment rev'd on other grounds*, 248 S.W.3d 160 (Tex. 2007); *Friberg-Cooper Water Supply Corp. v. Elledge*, 197 S.W.3d 826, 832 (Tex. App.—Fort Worth

2006) (citations omitted), *review granted, judgment rev'd on other grounds*, 240 S.W.3d 869 (Tex. 2007); *Amoco Prod. Co. v. Smith*, 946 S.W.2d 162, 164 (Tex. App.—El Paso 1997, no writ) (citations omitted); *cf. Hancock v. Chi. Title Ins. Co.*, 635 F. Supp. 2d 539, 560 (N.D. Tex. 2009) (Fitzwater, C.J.) ( "[U]njust enrichment is a theory of liability that a plaintiff can pursue through several equitable causes of action, including money had and received, but not as a separate and distinct claim.").

Unjust enrichment and money had and received "claims" are thus more properly described as alternate theories of the same claim for restitution. *See Baughman v. CamWest Partners II, LLC*, No. 3:09-CV-2243-F, 2010 WL 11561755, at *3 (N.D. Tex. May 6, 2010) (Furgeson, S.J.). Thus, while a plaintiff is "free to assert" a single claim of restitution based on "two theories of recovery: unjust enrichment and money had and received," it cannot assert them as two separate causes of action. *See id.* Accordingly, the Court construes OCT's money had and received and unjust enrichment claims as two theories supporting one claim for restitution. *See, e.g., Doss v. Homecoming Fin. Network, Inc.*, 210 S.W.3d 706, 709 n.4, 710-11 (Tex. App.—Corpus Christi–Edinburg 2006, pet. denied) (construing the plaintiff's claims for unjust enrichment and money had and received as one claim for money had and received). Because the Court grants summary judgment to OCT on its money had and received claim, it need not address OCT's alternate unjust enrichment theory.

C.  The Texas Theft Liability Act

"The TTLA provides for civil suits against those who commit theft, as defined by the Texas Penal Code." *Maxum Enters., LLC v. Auto. Fleet Enters., Inc.*, No. 3:18-CV-0687-B, 2018 WL 3417234, at *3 (N.D. Tex. July 13, 2018) (Boyle, J.) (citing Tex. Civ. Prac. & Rem. Code §§ 134.002(2), 134.004)). The Texas Penal Code, in turn, defines theft as "unlawfully appropriat[ing] property with *intent to deprive* the owner of the property." *Id.* (emphasis added) (citing Tex. Penal Code § 31.03(a)).

The definition of "deprive" includes "withhold[ing] property from the owner permanently or for so extended a period of time that a major portion of the value or enjoyment of the property is lost to the owner" or "dispos[ing] of property in a manner that makes recovery of the property by the owner unlikely." § 31.01(2)(A), (C). *Intent* to deprive must exist at the time of the taking and "can be inferred from the surrounding circumstances." *In re Powers*, 261 F. App'x 719, 722 (5th Cir. 2008) (citation omitted).

In opposition to OCT's Motion, Defendants argue that they did not have the requisite intent to deprive. Doc. 28-1, Defs.' Resp. Summ. J., 7-8. According to Defendants, at the time of the transfers at issue, they believed the Proceeds were a donation to the Church and its projects. *Id.*; Doc. 24-2, Mot. Summ. J. App., 135-36. Donations are a significant source of the Church's funding, and the Church typically did not contact donors about a given donation after the fact. *Id.* In other words, Defendants claim to have believed that they rightfully possessed the Proceeds at the time of the alleged deprivation; therefore, they did not possess with the requisite intent under the Texas Penal Code. *See* § 31.03(a) (requiring intent to deprive the owner of the property). While intent to deprive can be inferred from surrounding circumstances, *see Powers*, 261 F. App'x at 722, an unreasonable but honest mistake as to the origin or purpose of the Proceeds would mean that the element of intent under the TTLA is not satisfied. Thus, Defendants have presented a genuine dispute as to whether they—at the time they held the Proceeds—had the requisite intent. Construing the facts most favorably to the non-moving party, *see Chaplin*, 307 F.3d at 371-72, the Court cannot resolve this fact issue at this summary judgment stage. *Cf. United States v. Shackelford*, 677 F.2d 422, 425 (5th Cir. 1982) ("Specific intent depends upon the state of mind of the defendant, not upon a

legal conclusion. Where the intent of the accused is an ingredient of the crime charged, the existence or nonexistence of that intent is a question of fact for the jury.").

D.   *Fraudulent Transfer*

   1. <u>Actual Fraudulent Transfer</u>

"[T]he elements of an actual fraudulent transfer under TUFTA are: (1) a creditor; (2) a debtor; (3) the debtor transferred assets shortly before or after the creditor's claim arose; (4) with actual intent to hinder, delay, or defraud any of the debtor's creditors." *In re Life Partner Holdings, Inc.*, 926 F.3d 103, 117 (5th Cir. 2019) (citing *Nwokedi v. Unltd. Restor'n Specialists, Inc.*, 428 S.W.3d 191, 204-05 (Tex. App.—Houston [1st Dist.] 2014, pet. denied)). Relevant to the fourth element, TUFTA provides a list of non-exhaustive factors that a court may consider in determining whether actual intent was present:

> [C]onsideration may be given, among other factors, to whether . . . (1) the transfer or obligation was to an insider; (2) the debtor retained possession or control of the property transferred after the transfer; (3) the transfer or obligation was concealed; (4) before the transfer was made or obligation was incurred, the debtor had been sued or threatened with suit; (5) the transfer was of substantially all the debtor's assets; (6) the debtor absconded; (7) the debtor removed or concealed assets; (8) the value of the consideration received by the debtor was reasonably equivalent to the value of the asset transferred or the amount of the obligation incurred; (9) the debtor was insolvent or became insolvent shortly after the transfer was made or the obligation was incurred; (10) the transfer occurred shortly before or shortly after a substantial debt was incurred; and (11) the debtor transferred the essential assets of the business to a lienor who transferred the assets to an insider of the debtor.

§ 24.005(b). "Debtors" include persons who are "liable on a claim." § 24.002(6). And "claim" includes any "right to payment or property, whether or not the right is reduced to judgment." § 24.002(3).

OCT argues that factors (1), (2), (3), (8), (9), and (10) for actual intent are present here because the Church transferred the Proceeds from its savings account to a variety of other affiliated

accounts, the Church retained control of the Proceeds after those transfers, the Church received no consideration for its transfer of funds, the Church "concealed" the transfers by failing to file certain tax returns reflecting such funds and failing to inform OCT of those transfers, the Church made its transfers shortly after receiving the Proceeds (thus after "incurr[ing]" debt owed to OCT), and the Church was insolvent after the transfers were made. Doc. 24-1, Br. Mot. Summ. J., 26-27. But OCT cites only Defendants' various bank statements for these arguments. *Id.* at 27. Those statements do not support OCT's allegations regarding failure to file tax returns reflecting the funds. Nor does one account's balance at a given time reflect whether the Church, or other Defendants, were rendered insolvent by a given transfer.

Because section 24.005(b) is non-exhaustive, the Court must also consider other circumstances surrounding the transfers at issue. *See* § 24.005(b) (noting that "other factors" may also be considered). OCT fails to address Defendants' response and testimony that because Defendants believed the funds were a donation, they transferred the funds to other accounts for regular church-operations purposes. *See* Doc. 28-1, Defs.' Resp. Summ. J., 8-9; Doc. 24-2, Mot. Summ. J. App., 135-36. As with OCT's theft claim, deposition testimony of Defendants' purported belief that the Proceeds were a donation, in light of the Church's undisputed nature as a donation-dependent organization, presents a genuine dispute of material fact as to intent, which the Court cannot resolve at the summary judgment stage. *See Chaplin*, 307 F.3d at 371-72 (holding that on summary judgment, courts must construe the facts most favorably to the non-moving party); *Walker v. Anderson*, 232 S.W.3d 899, 914 (Tex. App.—Dallas 2007, no pet.) ("Ordinarily, whether the

transfer was made with the actual intent to defraud creditors is a fact question." (citation omitted)). Accordingly, the Court denies summary judgment for OCT on its fraudulent transfer claim.

    2.   <u>Constructive Fraudulent Transfer</u>

Fraudulent transfers under TUFTA are divided into two types: (1) actual fraudulent transfers under Texas Business & Commerce Code section 24.005(a), which was the subject of the Court's preceding analysis; and (2) constructive fraudulent transfers under section 24.006. *Feuerbacher v. Moser*, No. 4:11-CV-272, 2012 WL 1070138, at *13 (E.D. Tex. Mar. 29, 2012) (citation omitted). These are separate, distinct claims. While fraudulent transfer requires that the defendant acted with fraudulent intent, *see* § 24.005(a)(1), constructive fraudulent transfer instead requires a showing that the defendant made the transfer without receiving reasonably equivalent value in exchange and was insolvent at the time, *see* § 24.006(a). While OCT's complaint does not specifically cite any particular section of TUFTA, OCT alleges that Defendants acted "with the actual intent to hinder, delay or defraud." Doc. 1, Compl. ¶ 62. OCT makes no allegation regarding the value received in exchange for any transfer, or that any Defendant was insolvent at the time of the transfer. Accordingly, OCT plainly brought its claim for actual fraudulent transfer under section 24.005(a) and not as a constructive fraudulent transfer claim under section 24.006.

OCT asks the Court—in the event that the Court does not grant summary judgment to OCT on its fraudulent transfer claim—to "hold Defendants liable for a constructive fraudulent transfer, which does not require a showing of intent." Doc. 24-1, Br. Mot. Summ. J., 27. However, "[a]s a general rule, new claims cannot be raised in motions for summary judgment." *Sun River Energy, Inc. v. McMillan*, No. 3:13-CV-2456-D, 2014 WL 4771852, at *10 (N.D. Tex. Sept. 25, 2014) (Fitzwater, C.J.) (citations omitted). Such claims are not properly before the Court. *See id.* (citation omitted).

Because OCT's fraudulent transfer claim was plainly brought under section 24.005 (actual fraudulent transfer) and not section 24.006 (constructive fraudulent transfer), OCT cannot now, in its Motion, bring a constructive fraudulent transfer claim. OCT did not request the Court's leave to amend. Accordingly, the Court will not entertain OCT's new claim for constructive fraudulent transfer.

E.     *Conversion*

Conversion is the "unauthorized and wrongful assumption and exercise of dominion and control over the personal property of another, to the exclusion of or inconsistent with the owner's rights." *Waisath v. Lack's Stores, Inc.*, 474 S.W.2d 444, 447 (Tex. 1971). "To succeed on a conversion claim under Texas law, the plaintiff must prove that '(1) he legally possessed the property or was entitled to it; (2) the defendant wrongfully exercised dominion and control over the property, excluding the plaintiff; (3) the plaintiff demanded the property's return; and (4) the defendant refused.'" *United States v. Boardwalk Motor Sports, Ltd.*, 692 F.3d 378, 381 (5th Cir. 2012) (quoting *Arthur W. Tifford, PA v. Tandem Energy Corp.*, 562 F.3d 699, 705 (5th Cir. 2009)).

"Conversion claims for money must meet additional requirements." *Id.* "An action will lie for conversion of money when its identification is possible and there is an obligation to deliver the specific money in question or otherwise particularly treat specific money." *Id.* (quoting *Hous. Nat'l Bank v. Biber*, 613 S.W.2d 771, 774 (Tex. App.–Houston [14th Dist.] 1981, writ ref'd n.r.e.)). "Specifically, actions for conversion of money are available in Texas *only* where money is (1) delivered for safekeeping; (2) intended to be kept segregated; (3) substantially in the form in which it is received

or an intact fund; and (4) not the subject of a title claim by the keeper." *Id.* (emphasis added) (citation modified).

At least one federal district court has found that an erroneous wire transfer can constitute "specific funds" for purposes of a conversion claim. *See One Place Cap. v. Oakes*, No. 4:18-CV-829-SDJ-KPJ, 2021 WL 4024450, at *5 (E.D. Tex. Aug. 2, 2021), *report and recommendation adopted*, No. 4:18-CV-829-SDJ-KPJ, 2021 WL 3931125 (E.D. Tex. Sept. 1, 2021). However, in *One Place Capital*, the plaintiff was able to show the district court that it "wired the funds . . . for safekeeping . . . based on the parties' prior course of dealing." *Id.* Here, OCT does not claim the Proceeds were delivered to OCT for safekeeping or that the funds were intended to be segregated. Nor does OCT address the other factors specific to conversion of money claims, as laid out in *Boardwalk Motor Sports*. *See* 692 F.3d at 381 (listing four additional requirements for conversion claims involving money). Because OCT fails to allege or satisfy the required elements for a conversion claim involving money, OCT cannot show that it is entitled to judgment as a matter of law on its conversion claim.

## IV.

## CONCLUSION

For the reasons discussed above, the Court **GRANTS IN PART** and **DENIES IN PART** OCT's Motions for Summary Judgment (Doc. 24).

**SO ORDERED.**

**SIGNED: December 5, 2025**.

_____
JANE J. BOYLE
SENIOR UNITED STATES DISTRICT JUDGE